UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-23432-Civ-SEITZ
        (15-20985-Cr-SEITZ)
MAGISTRATE JUDGE P.A. WHITE

MARIO JAVIER CEDENO-GONZALEZ,

    Movant,

vs.                                    REPORT OF
                                   MAGISTRATE JUDGE

UNITED STATES OF AMERICA,

    Respondent.
_____/

## I. Introduction

This matter is before the Court on the movant's *pro se* motion to vacate, as amended (Cv-DE#12), filed pursuant to 28 U.S.C. §2255, attacking the constitutionality of his conviction and sentence for mail fraud, entered following a guilty plea in **case no. 15-20985-Cr-Seitz.**

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B),(C); S.D.Fla. Local Rule 1(f) governing Magistrate Judges; S.D. Fla. Admin. Order 2003-19; and Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts.

Because summary dismissal is warranted and the movant is not entitled to post-conviction relief, no order to show cause has been issued in the instant case; and, as such, the respondent was not required to file a response herein. See e.g., Broadwater v. United States, 292 F.3d 1302, 1303-04 (11th Cir. 2002) (a district court has the power under Rule 4 of the Rules Governing Section 2255

Cases to summarily dismiss a movant's claim for relief so long as there is a sufficient basis in the record for an appellate court to review the district court's decision); see also, Termitus v. Sec'y, Dep't of Corr's, 667 Fed.Appx. 303 (11 Cir. June 23, 2016) (unpublished); Hillary v. Sec'y, Dep't of Corr's, 294 Fed.Appx. 569, 572 (11 Cir. Sept. 26, 2008) (unpublished).

The court has reviewed the §2255 motion, as amended (Cv-DE#12), with supporting memorandum (Cv-DE#12-1), the Presentence Investigation Report ("PSI"), the Statement of Reasons ("SOR"), along with all pertinent portions of the underlying criminal file,[1] including the negotiated, written plea agreement (Cr-DE#20), the stipulated factual proffer (Cr-DE#21), the change of plea (Cv-DE#11-1) and sentencing (Cv-DE#11-2) transcripts.

## II.  Claim

Construing the §2255 motion liberally as afforded *pro se* litigants pursuant to Haines v. Kerner, 404 U.S. 519 (1972), the movant raises the following grounds for relief:

1. He was denied effective assistance of counsel, where his lawyer misadvised him to plead guilty to an aggravated felony offense without explaining that this could have collateral consequences to the movant's immigration status in the United States. (Cv-DE#12:3; Cv-DE#12-1:2).

2. He was denied effective assistance of counsel,

---

[1] The court may take judicial notice of its own records in habeas proceedings, McBride v. Sharpe, 25 F.3d 962, 969 (11th Cir. 1994), Allen v. Newsome, 795 F.2d 934, 938 (11th Cir. 1986), together with the state records, which can be found on-line.  See Fed.R.Evid. 201; see also, United States v. Glover, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999)(citing United States v. Rey, 811 F.2d 1453, 1457 n.5 (11 Cir. 1987)(finding the district court may take judicial notice of the records of inferior courts).

where his lawyer failed to object to the loss assessment as set forth under the relevant conduct portion of the PSI. (Cv-DE#1:4; Cv-DE#12-1:7).

### III.  <u>Factual Background and Procedural History</u>

#### A. <u>Facts of the Offense</u>

Movant acknowledges that the stipulated factual proffer merely presents a mere summary of the facts, for the limited purpose of supporting movant's guilty plea, but does not purport to set forth all of the facts and circumstances relating to the movant's participation in the offense. (Cr-DE#21:1). Movant also acknowledged that the factual proffer does not identify other individuals involved in the activity, nor their participation therein. (<u>Id</u>.).

The movant agrees that Walt Disney World ("WDW") had a shipping account with DHL. (<u>Id</u>.:2). The DHL account permitted WDW to use DHL to ship packages domestically and internationally. (<u>Id</u>.). DHL would, in turn, send WDW a billing statement for the cost of shipments. (<u>Id</u>.:2).

The movant gained access to WDW's DHL shipping account and, without WDW's approval, listed himself as an "authorized" user on the account. (<u>Id</u>.). Thereafter, the movant approached businesses, including "T.E. LLC" and "G.C. LLC," in the Doral, Florida area, representing to them that he owned a shipping business, and could ship packages via DHL at a discounted rate. (<u>Id</u>.).

Using WDW's DHL account, the movant shipped packages on behalf

3

of various businesses in the Doral, Florida area, including T.E. LLC and G.C. LLC, who in turn paid the movant for the shipments by check. (<u>Id</u>.). Movant would deposit these checks into his personal bank account, while DHL then billed WDW for the cost of such shipments. (<u>Id</u>.).

Movant shipped packages on numerous occasions utilizing WDW's DHL account. (<u>Id</u>.). Movant knew that WDW had not authorized him to send packages using its DHL account. (<u>Id</u>.:3). Nevertheless, the movant used WDW's DHL account for the purpose of enriching himself. (<u>Id</u>.). For example, on January 31, 2014, the movant shipped a package, using WDW's DHL account, from Doral, Florida to Maracaibo, Venezuela. (<u>Id</u>.).

Movant agreed that if the case had gone to trial, the government would have proven beyond a reasonable doubt, the following facts: (1) that movant devised a scheme to obtain money or property, using false or fraudulent pretenses, representations, or promises; (2) that the false or fraudulent pretenses, representations, or promises were about a material fact; (3) that the movant intended to defraud someone; and, (4) that the movant used a private or commercial interstate carrier by depositing or causing to be deposited with the carrier, something meant to help carry out the scheme to defraud. (<u>Id</u>.:3).

## B.   <u>Indictment, Pre-trial Proceedings, Conviction, Sentencing, and Direct Appeal</u>

Movant was charged with and entered into a negotiated, written plea agreement, agreeing to plead guilty to Count 1 of an

Indictment,[2] charging him with mail fraud arising from the January
31, 2014 shipment from Florida to Venezuela, in violation of 18
U.S.C. §1341 and 2. (Cr-DE#20). In exchange, the government agreed
to dismiss all remaining counts after sentencing. (<u>Id</u>.:1).

Movant acknowledged that the court could depart from the
advisory guideline range computed, and while required to consider
that range, it was not bound to impose a sentence within the
advisory range, but was permitted to tailor the sentence in light
of other statutory concerns. (<u>Id</u>.:1-2). The movant also
acknowledged that any estimate of the probable sentence to be
imposed, whether from his attorney, the government, or the
probation office, was merely a predication, not a promise, and was
not binding on the government, the probation office, or the court.
(<u>Id</u>.:1-2,5-6). Movant affirmed that he could not withdraw his plea
based upon the court's failure to accept a sentencing
recommendation made by the parties. (<u>Id</u>.). He understood that the
court must impose a statutory minimum of 5 years and may impose up
to a 20-year statutory maximum term of imprisonment, to be followed
by up to 3 years supervised release. (<u>Id</u>.:2).

The government agreed to recommend up to a 3-level reduction
to the movant's base offense level under the advisory guidelines,
based on his timely acceptance of responsibility. (<u>Id</u>.:3). The
movant reserved the right to request a downward variance from the
advisory guideline sentencing range set forth in the PSI. (<u>Id</u>.:4).
Both parties agreed, although not binding on the probation officer
or the court, to jointly recommend that the court make the

---

[2]The Indictment charged movant with 10 separate mail fraud counts. The
government agreed to dismiss the remaining counts after sentencing. As to each
count, movant faced a statutory maximum of 20 years imprisonment.

following findings and conclusion as to the sentence to be imposed: **(1) that the loss amount is $723,000.00;** (2) that the number of victims is at least ten; **(3) that the amount of restitution owed is $732,000.00;** and, (4) that no other agreements, other than set forth herein, have been made between the parties. (<u>Id</u>.); (emphasis added).

Additionally, movant acknowledged that 18 U.S.C. §3742 and 28 U.S.C. §1291 afford him the right to appeal the sentence imposed, but in exchange for the undertakings made by the government, the movant was waiving all rights to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the advisory guideline range the court establishes at sentencing. (<u>Id</u>.:4-5).

Finally, movant understood that his guilty plea may have collateral consequences with respect to his immigration status if he was not a natural born citizen of the United States. (<u>Id</u>.:6). Movant understood that although removal, denaturalization, and other immigration consequences are the subject of a separate proceeding, no one, including his attorney, or the court, can predict to a certainty what effect the movant's guilty plea will have on movant's immigration status. (<u>Id</u>.:6). Nevertheless, **the movant affirmed that he wanted to plead guilty, regardless of any immigration consequences that the guilty plea may entail, even if the consequence is denaturalization and automatic removal from the United States.** (<u>Id</u>.:6); (emphasis added).

On July 7, 2016, a change of plea proceeding, pursuant to

<u>Fed.R.Cr.P.</u> 11, was conducted by the district court. (Cv-DE#11-1).
Before being given the oath, the movant confirmed that he is able
to speak English, and that he wanted to change his plea to guilty
as to Count 1 of the Indictment. (Cr-DE#11-1:2-3). Movant also
understood that if he answered any questions falsely, he could be
prosecuted in a separate action for perjury or for making a false
statement. (<u>Id</u>.:4).

After being given the oath, the movant provided background
information, including his age and education. (<u>Id</u>.:4). He stated
that in 1993 he received a Bachelor's Degree in Political Science
in Venezuela. (<u>Id</u>.:4-5). He indicated he came to this country on
February 12, 2013, and affirmed being a Venezuelan citizen. (<u>Id</u>.:4-
6). Movant confirmed that his attorney had been privately retained,
that he was able to communicate with counsel in English and
Spanish, and that counsel had always been available to speak with
him, as needed. (<u>Id</u>.:7). Movant also agreed that counsel had spent
sufficient time with the movant so that he could understand his
options and the consequences of such options. (<u>Id</u>.). Movant
conceded that counsel had answered all of his questions, and felt
he had enough information to make an informed, intelligent
decision. (<u>Id</u>.:8).

Next, movant denied being recently treated for any mental
illness, drug or alcohol addiction. (<u>Id</u>.:8). He affirmed he had not
eaten or drunk anything that would affect his ability to under the
Rule 11 proceedings. (<u>Id</u>.). He also denied taking any prescription
or non-prescription medications or alcohol during the preceding 24-
hour period. (<u>Id</u>.). When asked if he had previously had enough time
to discuss his case, his options and the consequences of those
options with counsel, movant responded that he had. (<u>Id</u>.:8-9).

Movant confirmed that counsel had explained as to Count 1, that the government was required to prove beyond a reasonable doubt mail fraud with regard to a January 31, 2014 DHL shipment from Doral, Florida to Maracaibo, Venezuela. (<u>Id</u>.:9). Movant confirmed his understanding of the government's proffer of the elements to support a mail fraud conviction. (<u>Id</u>.:10-11). Movant further acknowledged that he had seen the government's evidence and had gone over it with "a fine tooth comb." (<u>Id</u>.:11). Movant indicated he had explained to counsel all the facts and circumstances surrounding how he had gotten himself into this situation. (<u>Id</u>.).

Movant stated he had discussed with counsel the advisory guidelines and how they might apply in his case. (<u>Id</u>.:11). Movant further understood that his sentence would be determined, based in part, on the advisory guideline range, and that the court could depart or vary, imposing a sentence that is less or more severe than that contained in the PSI. (<u>Id</u>.:12). Movant understood that since the offense involved fraud, the amount of loss will drive the sentence up. (<u>Id</u>.). Movant understood that the court, in determining the sentence to be imposed, would look at his role in the offense, his eligibility for acceptance of responsibility, and his criminal history. (<u>Id</u>.:14). Movant also acknowledged that the court was required to consider the statutory factors, pursuant to 18 U.S.C. §3553(a), when imposing sentence. (<u>Id</u>.:15). Movant agreed that any estimate regarding his sentence exposure by counsel or anyone else was merely that, an estimate, and was not binding on the court, nor will it permit the movant to withdraw his plea. (<u>Id</u>.:15).

Regarding the factual proffer, the movant acknowledged it was his signature on the last page, and affirmed reading and discussing

8

the document with counsel before he signed it. (<u>Id</u>.:16). Movant
stated he did not have any changes, corrections, additions, or
subtractions he wanted made to the factual proffer. (<u>Id</u>.:17). In
fact, movant affirmed that the court could rely on the factual
proffer as a true and accurate statement of the movant's involved
in the charged offense. (<u>Id</u>.:17).

Next, regarding the written plea agreement, movant
acknowledged he signed the plea, but before he did so, he read and
reviewed the terms and conditions contained therein with counsel.
(<u>Id</u>.:18). He affirmed that counsel answered all of his questions,
and as a result, the movant understood the contents of the plea
agreement. (<u>Id</u>.). Movant also acknowledged that the plea agreement
represented the entire understanding he had reached with the
government. (<u>Id</u>.). He denied that there were any other side deals
or agreements, either written or oral. (<u>Id</u>.).

As to the contents of the plea, movant understood that the
government would recommend he receive up to a 3-level reduction to
his base offense level, based on timely acceptance of
responsibility, but the court was not required to accept the
recommendation. (<u>Id</u>.:19). Movant also understood that he could
request a downward variance from the guideline range at sentencing,
but the court was not required to grant that request either.
(<u>Id</u>.:20).

More importantly, and relevant to this §2255 motion, movant
understood that the loss amount involved is $723,000.00, that there
were ten or more victims, and that **restitution in the amount of
$723,000.00 would be required.** (<u>Id</u>.:20); (emphasis added). Again,
movant acknowledged that the court was not bound by the

9

recommendations contained in the plea agreement. (<u>Id</u>.).

Movant denied being made any promises, other than those set forth in the plea agreement, in order to induce him to change his plea. (<u>Id</u>.:21). Movant denied being threatened, forced, or coerced in any way to change his plea. (<u>Id</u>.). When asked if he was satisfied with counsel's representation in the case, movant responded that he was. (<u>Id</u>.). In response to the court's inquiry, movant indicated that there was nothing he would have liked counsel to have done differently on his behalf. (<u>Id</u>.).

Regarding the constitutional rights he was waiving, movant again affirmed that he was giving up his right to a trial by jury, to have a lawyer assist in his defense, to the presumption of innocence, to require the government to prove the charges beyond a reasonable doubt, the right to testify on his own defense, the right to call defense witnesses to testify on his behalf, and to cross-examine the prosecution witnesses. (<u>Id</u>.:22-23). Movant also understood that by pleading guilty, he was giving up the right not to incriminate himself. (<u>Id</u>.:24). Movant acknowledged that if the court accepted his plea, it had the power to impose up to a term of 20 years imprisonment, to be followed by 3 years supervised release. (<u>Id</u>.:24-25). **Movant understood that restitution was mandatory in his case, and he would be assessed a minimum of $723,000.00.** (<u>Id</u>.:25); (emphasis added).

Regarding the collateral consequences stemming from the entry of his plea, **movant acknowledged and affirmed that since he was not a U.S. citizen, the entry of a guilty plea in this case would be subject him to deportation from the United States to Venezuela, and he would not be able to return to the United States without the**

**express written permission of the appropriate person in the Department of Homeland Security. (Id.:26). Movant confirmed having discussed this precise issue with his defense attorney and his immigration attorney. (Id.).** He again stated he understood his guilty plea could result in his deportation. (Id.). Movant was aware that, since the offense involved fraud, the victim could be heard at sentencing. (Id.:27).

Regarding the waiver of his appellate rights, movant acknowledged and understood that the plea agreement contained an appellate waiver, but in exchange for the concessions made by the government, as set forth in the plea agreement, he was giving up the right to appeal any restitution order or the manner in which the sentence was imposed, unless it was greater than the 20-year maximum or an upward departure from the guideline range which the court establishes at the time of sentencing. (Id.:27-28). Movant confirmed he had discussed the appellate waiver with counsel, including the pros and cons of waiving the right to a direct appeal. (Id.:28). Movant again affirmed that it was his sole decision to agree to the waiver of the right to appeal the sentence imposed. (Id.:28).

The court then asked whether the movant still wanted to plead guilty in this case, and the movant responded, "Yes, Your Honor." (Id.:28-29). Movant indicated he was doing so after thoughtful consideration, and the decision was made knowingly and voluntarily. (Id.:29). When asked how he wished to formally plead to Count 1 of the Indictment charging him with mail fraud, in violation of 18 U.S.C. §1341 and §2, movant responded, "Guilty." (Id.).

Thereafter, the court found the movant fully competent and

capable of entering into an informed plea, being aware of the nature of the charges and the consequences of the plea, that his plea was knowing and voluntary, supported by an independent basis in fact, containing each of the essential elements of the offense. (Id.:29-30). The court then accepted the movant's plea and adjudicated him guilty on Count 1 of the Indictment. (Id.:30).

Prior to sentencing, a PSI was prepared which set movant's base offense level at 7, pursuant to U.S.S.G. §2B1.1, for an offense involving a violation of 18 U.S.C. §1341, since it has a statutory 20-year maximum term of imprisonment. (PSI ¶17). A 14-level increase was added to the base offense level, because the amount of loss involved was more than $550,000.00, but less than $1,500,000.00, pursuant to U.S.S.G. §2B1.1(b)(1)(H). (PSI ¶18). A 3-level reduction was taken based on movant's acceptance of responsibility, resulting in a total adjusted offense level 18. (PSI ¶26). The probation officer also determined that the movant had zero criminal history points, resulting in a criminal history category I. (PSI ¶29).

Based upon a total offense level 18 and a criminal history category I, the advisory guideline range was 27 months at the low end and 33 months imprisonment at the high end. (PSI ¶66). Statutorily, the movant faced zero to 20 years imprisonment for violation of 18 U.S.C. §1341. (PSI ¶65).

Prior to sentencing, movant filed objections to the PSI with an incorporated request for a downward variance. (Cr-DE#26). In pertinent part, movant objected to the representation that he was not legally in the United States, when documents reflected he had, in fact, entered legally and then later filed an asylum

application. (Id.:1). Movant also requested a downward variance based on the §3553(a) statutory factors. (Id.).

On September 20, 2016, the movant appeared for sentencing. (Cv-DE#11-2). At that time, the court indicated as to the factual dispute regarding the movant's legal status in the United States, that it would remove the sentence that he "was not legally in the United States." (Id.:3). Instead, the court stated that it would add a notation that the movant was neither a U.S. citizen nor an existing legal resident, and that he may be subject to removal proceedings by U.S. Immigration and Customs Enforcement. (Id.:3-4). The parties then agreed that the total offense level was 18 with a criminal history category I, resulting in an adjusted guideline offense level between 27 to 33 months imprisonment. (Id.:5). The court indicated it had reviewed the PSI, together with the many letters written on movant's behalf, commenting that the movant was blessed to have such an incredibly large family. (Id.:6). However, the court found there was nothing under the §3553(a) factors that would suggest a reason to depart outside the guideline range. (Id.). Therefore, the court was inclined to sentence the movant to 27 months imprisonment, a sentence at the low end of the advisory guideline range. (Id.).

Before sentence was imposed, counsel next argued in support of mitigation and the request for a downward variance that the actual loss amount was more akin to $30,000.00, the profit margin movant received, as opposed to the entire $732,000.00. (Id.:9). In response, the government argued for a low end guideline sentence, stating there were two companies from which the movant profited, and as to each he received $30,000.00, for a total of $60,000.00, even though WDW, the victim, was charged $723,000.00. (Id.:11).

Regarding whether or not the movant ceased his criminal activities over a year prior to the indictment, the government responded that was not entirely true, because the movant had met with agents in January 2015, at which time the movant represented he was again attempting to open up another DHL account in Florida. (Id.:12). At the time, the movant explained he had a new company, MJCG Outlet, and was acting as a middleman, shipping for particular clients. (Id.). When questioned about this account, the movant got suspicious and never answered them. (Id.).

Thereafter, the court indicated it had considered the statements of all the parties, the PSI report containing the advisory guidelines, and the statutory factors set forth in 18 U.S.C. §3553(a). (Id.:18). The court held that it had considered, but declined to vary from the low end of the guidelines. (Id.:18). The court noted that while it was movant's first offense, and he demonstrated heartfelt remorse, pledging to never let it happen again, the offense was not "a one time incident. It was over the course of a year. It underscores how easy it is for the mind to self-delude..." (Id.:18). Looking at the need for deterrence, "both general and sufficient, the need to impose a just sentence, no greater than necessary, and the need to ensure that there is as much uniformity as one can with similarly situated defendants for similar crimes," the Court explained that a variance was not warranted, believing that a sentence at the low end of the guidelines appropriate. (Id.). The court then sentenced the movant to a total term of 27 months imprisonment, to be followed by 3 years supervised release, and restitution in the amount of $723,000.00. (Id.:18-19,21). The Judgment was entered by the Clerk on **September 21, 2016**. (Cr-DE#33). No appeal was prosecuted. (Cv-DE#12:2).

14

Consequently, for purposes of the federal one-year limitations period, the judgment of conviction in the underlying criminal case become final on **Wednesday, October 5, 2016,** fourteen days after the entry of the judgment, when time expired for filing a notice of appeal.[3] At the latest, the movant was required to file this motion to vacate within one year from the time the judgment became final, or no later than **October 5, 2017.** See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); see also, See Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008)(citing Ferreira v. Sec'y, Dep't of Corr's, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)(this Court has suggested that the limitations period should be calculated according to the "anniversary method," under which the limitations period expires on the anniversary of the date it began to run); accord United States v. Hurst, 322 F.3d 1256, 1260-61 (10th Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1008-09 (7th Cir. 2000)). Applying the anniversary method to this case means movant's limitations period expired on **October 5, 2017.**

On **September 12, 2017,** the movant returned to this court filing his initial motion to vacate, pursuant to 28 U.S.C. §2255, after he signed and then handed it to prison authorities for mailing in accordance with the mailbox rule.[4] (Cv-DE#1:7). Absent

---

[3]Where, as here, a defendant does not pursue a direct appeal, her conviction becomes final when the time for filing a direct appeal expires. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). On December 1, 2009, the time for filing a direct appeal was increased from 10 to 14 days days after the judgment or order being appealed is entered. Fed.R.App.P. 4(b)(1)(A)(i). The judgment is "entered" when it is entered on the docket by the Clerk of Court. Fed.R.App.P. 4(b)(6). Moreover, now every day, including intermediate Saturdays, Sundays, and legal holidays are included in the computation. See Fed.R.App.P. 26(a)(1).

[4]"Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); see Fed.R.App. 4(c)(1) ("If an inmate confined in an institution files a notice of appeal in either a civil

evidence to the contrary, it is presumed, for purposes of this Report, that the motion was filed on the date it was executed by the movant. (Id.). Movant's was ordered and filed an amended motion on **October 19, 2017.** (Cv-DE#12). Careful review of the amended motion reveals it relates back to his initially filed §2255 motion, pursuant to Davenport v. United States, 217 F.3d 1341 (11 Cir. 2000), because it raises the same claims previously raised.

## IV.   Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to §2255 are extremely limited. A prisoner is entitled to relief under §2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. See 28 U.S.C. §2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

"Relief under 28 U.S.C. §2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004)(citations omitted). It is also well-established that a §2255 motion may not

---

or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."). Unless there is evidence to the contrary, like prison logs or other records, a prisoner's motion is deemed delivered to prison authorities on the day he signed it. See Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001); Adams v. United States, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

be a substitute for a direct appeal. Id. at 1232 (citing United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . "

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal." Frady, 456 U.S. at 152; McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001); Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under Section 2255. This is because "[r]elief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Lynn, 365 F.3d at 1232-33 (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)(internal quotations omitted)).

If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or Presentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. §2255. To obtain this relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." Frady, 456 U.S. at 166, 102 S.Ct. at 1584 (rejecting the plain

17

error standard as not sufficiently deferential to a final judgment). Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). See also Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous"). As indicated by the discussion below, the motion and the files and records of the case conclusively show that movant is entitled to no relief, therefore, no evidentiary hearing is warranted.

In addition, the party challenging the sentence has the burden of showing that it is unreasonable in light of the record and the §3553(a) factors. United States v. Dean, 635 F.3d 1200, 1209-1210 (11th Cir. 2011)(citing United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005)); see also, United States v. Bostic, 645 Fed.Appx. 947, 948 (11th Cir. 2016)(unpublished).[5] The Eleventh Circuit recognizes "that there is a range of reasonable sentences from which the district court may choose," and ordinarily expect a sentence within the defendant's advisory guideline range to be

---

[5]"Unpublished opinion are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

reasonable. <u>United States v. Talley</u>, <u>supra</u>.

## A. <u>Guilty Plea Principles</u>

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970). <u>See also</u> <u>United States v. Ruiz</u>, 536 U.S. 622, 629 (2002); <u>Hill v. Lockhart</u>, 474 U.S. 52, 56 (1985); <u>Henderson v. Morgan</u>, 426 U.S. 637, 645 n.13 (1976).

To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. <u>United States v. Moriarty</u>, 429 F.3d 1012, 1019 (11th Cir. 2005)(table); <u>United States v. Mosley</u>, 173 F.3d 1318, 1322 (11th Cir. 1999).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, <u>United States v. Patti</u>, 337 F.3d 1317, 1320 (11th Cir. 2003), <u>cert. den'd</u>, 540 U.S. 1149 (2004), attack the voluntary and knowing character of the guilty plea, <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973); <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the

19

constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986).

To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." Id.; see also, United States v. Frye, 402 F.3d 1123, 1127 (11th Cir. 2005)(per curiam); United States v. Moriarty, 429 F.3d 1012 (11th Cir. 2005).[6]

In other words, a voluntary and intelligent plea of guilty made by an accused person must therefore stand unless induced by misrepresentations made to the accused person by the court, prosecutor, or his own counsel. Brady v. United States, 397 U.S. 742, 748 (1970). If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause. See Santobello v. New York, 404 U.S. 257 (1971).

---

[6]In Moriarty, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that he gives under oath.

Id.

### B.   Ineffective Assistance of Counsel Principles

Even if movant attempts to suggest in objections or otherwise that counsel rendered ineffective assistance, this Court's analysis would begin with the familiar rule that the Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defense." U.S. CONST. amend. VI.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); Harrington v. Richter, 562 U.S. 86, 104, 131 S.Ct. 770, 788 (2011). See also Premo v. Moore, 562 U.S. 115, 121-22, 131 S.Ct. 733, 739-740 (2011); Padilla v. Kentucky, 559 U.S. 356, 367, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010). If the movant cannot meet one of Strickland's prongs, the court does not need to address the other prong. Strickland, 466 U.S. at 697, 104 S.Ct. 2069 (explaining a court need not address both prongs of Strickland if the defendant makes an insufficient showing on one of the prongs). See also Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004); Brown v. United States, 720 F.3d 1316 (11th Cir. 2013).

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008)(citations omitted); Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000). With regard to the prejudice requirement, the movant must establish that, but for counsel's deficient performance, the outcome of the proceeding

would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); Allen v. Sec'y, Fla. Dep't of Corr's, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).

In the context of a guilty plea, the first prong of Strickland requires petitioner to show that the plea was not voluntary because he/she received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases, while the second prong requires petitioner to show a reasonable probability that, but for counsel's errors, he/she would have entered a different plea. Hill, 474 U.S. at 56-59. If the petitioner cannot meet one of Strickland's prongs, the court does not need to address the other prong. Dingle v. Sec'y for Dep't of Corr's, 480 F.3d 1092, 1100 (11th Cir.), cert. den'd, 552 U.S. 990 (2007); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.), reh'g and reh'g en banc den'd by, Holladay v. Haley, 232 F.3d 217 (11th Cir.), cert. den'd, 531 U.S. 1017 (2000).

However, a defendant's sworn answers during a plea colloquy must mean something. Consequently, a defendant's sworn representations, as well as representation of defense counsel and the prosecutor, and any findings by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral

22

proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977);
<u>United States v. Medlock</u>, 12 F.3d 185, 187 (11th Cir.), <u>cert. den'd</u>,
513 U.S. 864 (1994); <u>United States v. Niles</u>, 565 Fed.Appx. 828 (11th
Cir. May 12, 2014)(unpublished).

A criminal defendant is bound by his/her sworn assertions and
cannot rely on representations of counsel which are contrary to the
advice given by the judge. <u>See</u> <u>Scheele v. State</u>, 953 So.2d 782, 785
(Fla. 4 DCA 2007)("A plea conference is not a meaningless charade
to be manipulated willy-nilly after the fact; it is a formal
ceremony, under oath, memorializing a crossroads in the case. What
is said and done at a plea conference carries consequences.");
<u>Iacono v. State</u>, 930 So.2d 829 (Fla. 4 DCA 2006)(holding that
defendant is bound by his sworn answers during the plea colloquy
and may not later assert that he committed perjury during the
colloquy because his attorney told him to lie); <u>United States v.</u>
<u>Rogers</u>, 848 F.2d 166, 168 (11th Cir. 1988)("[W]hen a defendant makes
statements under oath at a plea colloquy, he bears a heavy burden
to show his statements were false.").

Moreover, in the case of alleged sentencing errors, the movant
must demonstrate that there is a reasonable probability that, but
for counsel's errors, the result of the proceeding would have been
less harsh due to a reduction in the defendant's offense level.
<u>Glover v. United States</u>, 531 U.S. 198, 203-04, 121 S.Ct. 696, 148
L.Ed.2d 604 (2001). A significant increase in sentence is not
required to establish prejudice, as "any amount of actual jail time
has Sixth Amendment significance." <u>Id</u>. at 203.

Furthermore, a §2255 movant must provide factual support for
his contentions regarding counsel's performance. <u>Smith v. White</u>,

815 F.2d 1401, 1406-07 (11ᵗʰ Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr's, 697 F.3d 1320, 1333-34 (11ᵗʰ Cir. 2012); Garcia v. United States, 456 Fed.Appx. 804, 807 (11ᵗʰ Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11ᵗʰ Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11ᵗʰ Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11ᵗʰ Cir. 1991), cert. den'd Tejada v. Singletary, 502 U.S. 1105 (1992); Stano v. Dugger, 901 F.2d 898, 899 (11ᵗʰ Cir. 1990)(citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)); United States v. Ross, 147 Fed.Appx. 936, 939 (11ᵗʰ Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail ... are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11ᵗʰ Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11ᵗʰ Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6ᵗʰ Cir. 1992).

## V.   <u>Threshold Issues-Timeliness</u>

As narrated previously, the movant filed his initial §2255 motion on **September 12, 2017,** close to one year after his conviction became final on **October 5, 2016.** The amended motion, filed **October 5, 2017,** relates back to the **September 12, 2017** motion because it raises identical claims and arguments. Since the initial motion was filed shortly before expiration of the one-year limitations period, it was timely instituted. Since the amendment thereto relates back to the timely filed motion, it is considered timely filed for purposes of the AEDPA's one-year limitations period. <u>Davenport v. United States</u>, 217 F.3d 1341 (11 Cir. 2000). Thus, this federal proceeding has been timely instituted, and review of the merits follows.

## VI.   <u>Discussion</u>

In **claim 1,** movant asserts that he was denied effective assistance of counsel, where his lawyer failed to properly advise the movant regarding the immigration consequences arising from the entry of his plea. (Cv-DE#12:3; Cv-DE#12-1:3). Movant claims he was unaware that pleading guilty to mail fraud, a violation of 18 U.S.C. §1341, was considered by Congress to be an "aggravated felony" for purposes of removal of aliens from the United States. (<u>Id</u>.). In support thereof, movant relies on <u>Padilla v. Kentucky</u>, 559 U.S. 356, 369, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010), in which the Supreme Court held that the Sixth Amendment requires defense counsel to inform a defendant whether his or her plea carries a risk of deportation. (Cv-DE#12-1:2). He claims that he was not advised by counsel that deportation would be a certainty if he pleaded guilty to the instant offense. (<u>Id</u>.).

25

The law is now well settled that a criminal defendant is entitled to the effective assistance of competent counsel before deciding whether to plead guilty. <u>Lee v. United States</u>,[7] ___ U.S. ___, 137 S.Ct. 1958, 1964, 198 L.Ed.2d 476 (2017);  <u>see also</u>, <u>Padilla v. Kentucky</u>, 559 U.S. 356, 357, 130 S.Ct. 1473, 1480-81, 176 L.Ed.2d 284 (2010); <u>Lloyd v. McNeil</u>, 2009 WL 2424576 (S.D. Fla. 2009) (defendant has the right to competent advice regarding the choice to accept a plea or go to trial). Advice regarding deportation "is not categorically removed from the ambit of the Sixth Amendment right to counsel," accordingly, <u>Strickland</u> applies to such claims. <u>Padilla</u>, 559 U.S. at 358.

Here, movant confirmed at the Rule 11 proceeding that he spoke not only with his defense counsel, but also his immigration attorney regarding the deportation consequences arising from the entry of his guilty plea. (Cv-DE#11-1:20,26). Nothing in the record suggests that the movant was concerned about deportation either at the plea hearing or sentencing. His post-conviction allegations here are refuted by the record, and rejected as incredulous. Therefore, the entry of his knowing and voluntary plea should not be upset. See <u>Dodd v. United States</u>, ___ Fed.Appx. ____, 2017 WL 4231073 (11 Cir. Sept. 25, 2017). Like Dodd, even if we credit the movant's allegations here that defense counsel was not expressly clear in his advice regarding the deportation consequences arising

---

[7]In <u>Lee</u>, the Supreme Court concluded that the movant's claim he would not have accepted a plea offer was backed by substantial and uncontroverted evidence, showing that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. <u>Lee</u>, <u>supra</u> at 1969. That case, however, is factually distinguishable because there the movant had no strong connections to any other country, and the consequences of proceeding to trial were not markedly harsher than pleading. <u>Id</u>. at 1968-69. Here, however, the movant had ties to Venezuela, but more importantly, had he gone to trial and was found guilty, he would have faced a significantly harsher sentence than that which was imposed.

from the entry of his guilty plea to the mail fraud count, the movant cannot demonstrate prejudice under <u>Strickland</u>. <u>Dodd v. United States</u>, <u>supra</u>.

In fact, contrary to the movant's representations here, the movant acknowledged executing the plea agreement which provided that his guilty plea could result in immediate removal and deportation from the United States. The thorough Rule 11 proceeding also advised movant about the collateral consequences arising from the fact that he was not a U.S. citizen and would be subject to separate deportation proceedings and immediate removal from the United States. Consequently, any deficiency was cured by the thorough change of plea proceedings, and movant's representations made therein, under oath. Not only did he discuss the fact with defense counsel, he also affirmed discussing the deportation consequences with his immigration attorney. Notwithstanding, the movant indicated he still wished to plead guilty, rather than proceed to trial. On the record before this court, movant has not demonstrated that he is entitled to relief on this claim.

Assuming counsel misadvised him, movant discussed the immigration consequences with his immigration attorney, and then was again thoroughly advised by the court that deportation was a reality, and that he would be unable to return to the United States until he obtained the express consent of immigration authorities prior to doing so. The plea agreement also placed movant on notice about the collateral consequences of deportation resulting from the entry of the guilty plea. Movant stated he understood the terms and conditions of the plea, had discussed them thoroughly with counsel, and nevertheless desired and did, in fact, enter his guilty plea. <u>See generally Blackledge v. Allison</u>, 431 U.S. 63, 74

(1977)(defendant's declarations in open court during the plea colloquy carry "a strong presumption of verity").

Accordingly, since movant's plea was voluntarily entered with full knowledge of the possible deportation consequences resulting therefrom, the movant is not entitled to relief on this claim. See United States v. Wilson, 245 Fed. Appx. 10 (11th Cir. 2007) (even if counsel was deficient in advising defendant of possible sentencing implications of guilty plea, defendant could not establish prejudice where the district court cured any error by explaining the consequences in detail before accepting the plea); see also United States v. Perez, 2010 WL 4643033 (D.Neb. Nov. 9, 2010) (even if Padilla applies, the court is not convinced the defendant could establish prejudice where two prior charges would likely be reinstated and defendant could well be subject to deportation without the federal conviction at issue); Amreya v. United States, 2010 WL 4629996 (N.D. Tex. Nov. 8, 2010) (movant failed to show prejudice where the trial court advised him of the possibility of deportation as the result of his plea and he testified he understood that consequence); Brown, 2010 WL 5313546 (same).

In **claim 2**, movant claims that counsel was ineffective for failing to challenge the amount of loss attributable to the movant. (Cv-DE#12; Cv-DE#12-1:7). He claims here that counsel basically told him to "be quiet," because "contesting the loss amount" could result in an increase to his offense level. (Cv-DE#12; Cv-DE#12-1:8). The movant concedes the plea agreement he executed set the loss amount and restitution to the victim, Walt Disney World ("WDW"), at $723,000.00. (Cv-DE#12-1:8). Movant suggests that counsel misadvised him to agree to the loss amount, so as to obtain

the best results at sentencing, by enabling the movant to ask for probation, as a downward variance. (Id.). Again, this claim is patently frivolous, belied by the record, and borders on the perjurious.

The Mandatory Victims Restitution Act ("MVRA") requires restitution for victims of certain crimes. 18 U.S.C. §3663A. One of crimes requiring restitution under the MVRA is wire fraud. United States v. Hemphill, 694 Fed.Appx. 697, 699–700 (11th Cir. 2017)(citing United States v. Robertson, 493 F.3d 1322, 1329 (11th Cir.  2007). The MVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. §3663A(a)(2). Also, the MVRA requires the district court to order restitution of "the full amount of each victim's losses as determined by the court." Id. §3664(f)(1)(A). The amount of restitution, however, "must be based on the amount of loss actually caused by the defendant's conduct." United States v. Hemphill, 694 Fed.Appx. at 699–700 (quoting United States v. Liss, 265 F.3d 1220, 1231 (11th Cir. 2001).

As noted previously in this Report, the movant agreed to the amount of WDW's loss as $723,000.00. He also agreed to restitution, in the amount of $723,000.00. It was not error for counsel to recommend stipulated to the amount of restitution, since that was the loss amount WDW suffered. Movant has not demonstrated that WDW's loss was less than that amount. In fact, the record reveals that the total loss amount could be even greater than the $732,000.00 stipulated to by the parties. In this case, restitution was mandatory. Even if counsel had objected, as suggested, the movant has not shown that such an objection would have been

sustained.

In fact, at sentencing counsel argued in support of the downward variance, that the amount of loss that should actually be attributable to the movant, based on his criminal activities, should not exceed $60,000.00, which represents the profit he received from the mail fraud. However, the court did not agree with the assessment, finding that the loss amount is determined not by profits, but by the losses sustained by the victims. Here, no showing has been made that had counsel attempted to challenge the loss amount and then the amount of restitution, that the court would not have granted WDW anything less than the $732,000.00 restitution imposed. To the contrary, further investigation may have resulted in a finding that the loss amount was even greater than anticipated, thereby exposing the movant to even greater restitution.

The law is well settled that "the proper amount of restitution is the amount wrongfully taken by the defendant." United States v. Hemphill, 694 Fed.Appx. at 699-700 (quoting United States v. Huff, 609 F.3d 1240, 1249 (11th Cir. 2010) (quotation omitted and alteration adopted). It is not intended to be a "windfall" to victims, but instead to make victims "whole for their losses." Id. (quotation omitted). The movant's wire fraud scheme caused WDW an agreed upon total loss of $732,000.00. Movant does not dispute that WDW suffered these losses, but rather suggests that it was the product of fraudulent activities conducted by the businesses which used his DHL services. The movant is mistaken. Moreover, the movant cannot dispute in this habeas proceeding the amount for which he knowingly and voluntarily agreed was owed to WDW as a result of his unlawful conduct. Consequently, the movant has not demonstrated

here either deficient performance or prejudice under <u>Strickland</u>.
Relief is not warranted.

To the extent the movant suggests his ultimate sentence was
unreasonable because it was based on misadvice by counsel, the
movant acknowledged at the Rule 11 proceeding, and as part of his
written plea agreement, that any estimate regarding the sentence
imposed was merely that, an estimate, and that the court would be
the only one to determine the ultimate sentence imposed. As a
result, the movant was cautioned that he would not be able to
withdraw his plea as a result of the court's sentence. Moreover,
both the plea agreement and the Rule 11 transcripts confirms that
movant was aware that he was certainly facing a term of
imprisonment, and that probation was not even a feasible option. Of
course, counsel argued for a downward departure, which the court in
its discretion could have, but was not obligated to grant.

Counsel vigorously attempted to minimize the loss amount at
sentencing, by focusing on the fact that the actual profit gained
by the offense was only $60,000.00. He also focused on the movant's
lack of criminal history, and familial circumstances to support the
downward variance. However, the court exercised its discretion,
finding that a downward departure was not warranted. Movant has not
demonstrated here that, but for counsel's arguments as suggested
herein, the court would have imposed a lesser sentence, or
otherwise ordered restitution in an amount less than that which was
agreed upon by the movant as part of the Rule 11 proceeding, and as
determined by the probation officer in the PSI.

The plea was knowing and voluntary, and the movant's sentence
and the amount of restitution lawfully entered. <u>See</u> <u>United States</u>

v. Moriarty, 429 F.3d 1012, 1019 (2005); See generally United States v. Clayton, 447 Fed.Appx. 65 (11th Cir. 2011) (defendant received close assistance of counsel where, during plea colloquy, defendant "confirmed that he had discussed the charges, plea agreement, and guidelines with his lawyer, had been given adequate time to consult with his lawyer, and was satisfied with his lawyer's representation," and had not "overcome the strong presumption that statements made during the plea colloquy are true"); United States v. Price, 139 Fed.Appx. 253 (11th Cir. 2005) (no abuse of discretion in denying motion to withdraw guilty plea where plea hearing transcript "makes clear that the district court went through Price's rights with him, that Price understood those rights, that Price was satisfied with his counsel, and that—despite any factual disputes—Price persisted in pleading guilty" and where hearing transcript included defendant's confirmation "that he had consulted his counsel about how to proceed and that he had been 'extremely' satisfied with his counsel's representation").

It is well settled that even when an attorney erroneously estimates his client's potential sentence, to warrant relief, the movant must also satisfy the prejudice requirement of Strickland by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59, 106 S.Ct. at 370; United States v. Stumpf, 827 F.2d 1027, 1030 (5th Cir. 1987); see also, United States v. Pease, 240 F.3d 938, 940-42 (11th Cir. 2001)(rejecting argument by defendant sentenced as a career offender that her plea was not knowing and voluntary because he had relied on counsel's prediction that her potential sentence under the plea agreement would be anywhere from five to ten years); Carranza v. United States, 508 Fed.Appx. 873 (11th Cir. 2013);

32

United States v. Arvanitis, 902 F.2d 489, 494-95 (7th Cir. 1990)(no
ineffective assistance where claim based only on inaccurate
prediction of sentence). As the Fifth Circuit explained in Daniel
v. Cockrell, 283 F.3d 697 (5th Cir. 2002):

> A guilty plea is not rendered involuntary by the
> defendant's mere subjective understanding that he would
> receive a lesser sentence. In other words, if the
> defendant's expectation of a lesser sentence did not
> result from a promise or guarantee by the court, the
> prosecutor or defense counsel, the guilty plea stands.
> Likewise, a guilty plea is not rendered involuntary
> because the defendant's misunderstanding was based on
> defense counsel's inaccurate prediction that a lesser
> sentence would be imposed.

Daniel, 283 F.3d at 703. No such representations have been made
here. Moreover, any misadvice by counsel was cured by the court's
thorough Rule 11 proceeding in which he acknowledged and affirmed
his understanding of the statutory maximum sentences he faced on
the offense of conviction, and agreed to the amount of restitution
owed WDW.

It also cannot be overlooked that the entry of the guilty plea
was clearly in the best interest of the movant. Because of the plea
negotiated by defense counsel, movant benefitted from a three level
reduction to his base offense level for acceptance of
responsibility. Had he proceeded to trial and been found guilty,
movant's exposure upon conviction was significantly greater. He
also may not have been eligible for a reduction in his guideline
range based on acceptance of responsibility. On the record before
this court, movant has not demonstrated prejudice under Strickland
arising from the failure to pursue this nonmeritorious claim.

His self-serving statements that he was misadvised by counsel

33

regarding his sentence exposure or otherwise, including counsel's failure to advice regarding the deportation consequences, and to challenge the amount of restitution imposed are wholly conclusory with no support whatever in the record, not to mention incredible.[8] Consequently, none of the arguments raised in this §2255 motion warrant federal habeas relief. Finally, when viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner due process of law. The petitioner therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the petitioner's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

Movant has also not demonstrated that he was factually innocent of the offense for which he pled guilty. To the contrary, the stipulated factual proffer, coupled with the change of plea proceedings, more than amply supports the offense of conviction.

---

[8]See generally United States v. Jones, 614 F.2d 80, 81-82 (5th Cir. 1980)(district court justified in dismissing section 2255 movant's claims when movant presented only conclusory allegations to support claims). See also Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991)(recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)).

Movant's allegations here to the contrary border on the perjurious. A habeas petitioner attempting to establish "actual innocence" must meet a high standard. Bousley v. United States, 523 U.S. 614 (1998). He must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, supra at 623, quoting, Schlup v. Delo, 513 U.S. 298, 327-328 (1995). The Court emphasized that actual innocence means factual innocence, not mere legal insufficiency. Id. See also High v. Head, 209 F.3d 1257 (11 Cir. 2000); Lee v. Kemna, 213 F.3d 1037, 1039(8 Cir.2000); Lucidore v. New York State Div. of Parole, 209 F.3d 107 (2 Cir. 2000)(citing Schlup v. Delo, 513 U.S. 298, 299, (1995); Jones v. United States,153 F.3d 1305 (11 Cir. 1998)(holding that appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him).

To be credible, a claim of actual innocence requires the petitioner to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup v. Delo, 513 U.S. at 324. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. Id. at 316. No such showing has been made here, and in fact, to the extent the movant attempts to protest his innocence, this is refuted by the record. Under the totality of the circumstances present here, the movant is entitled to no relief on this basis. Further, he also cannot fault counsel for failing to pursue the nonmeritorious claims raised herein.

It should further be noted that this court has considered all

of the petitioner's arguments raised in his §2255 motion. See <u>Dupree v. Warden</u>, 715 F.3d 1295 (11th Cir. 2013)(<u>citing</u> <u>Clisby</u> <u>v. Jones</u>, 960 F.2d 925 (11th Cir. 1992)). For all of his arguments, movant has failed to demonstrate he is entitled to vacatur of his conviction and sentence. Thus, to the extent a precise argument, subsumed within his ground for relief, was not specifically addressed herein, the claim was considered and found to be devoid of merit, warranting no discussion herein.

In conclusion, the record reveals that movant is not entitled to relief on any of the arguments presented as it is apparent from the extensive review of the record above that movant's guilty plea was entered freely, voluntarily and knowingly with the advice received from competent counsel and not involuntarily and/or unknowingly entered, as appears to now be suggested. See <u>Boykin v.</u> <u>Alabama</u>, 395 U.S. 238, 243 (1969); <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970).<sup>9</sup> <u>See also</u> <u>Hill v. Lockhart</u>, <u>supra</u>; <u>Strickland v.</u> <u>Washington</u>, <u>supra</u>. 466 U.S. 668 (1984).

## VII. <u>Evidentiary Hearing</u>

Movant is also not entitled to an evidentiary hearing on the remaining claims raised in this proceeding. Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would

---

[9]It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. <u>Brady v.</u> <u>United States</u>, 397 U.S. 742, 748 (1970). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. <u>Mabry v. Johnson</u>, 467 U.S. 504, 508 (1984).

establish his right to collateral relief. See Schriro v. Landrigan, 550 U.S. 465, 473-75, 127 S.Ct. 1933, 1939-40, 127 S.Ct. 1933 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). See also Townsend v. Sain, 372 U.S. 293, 307 (1963); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979)(holding that §2255 does not require that the district court hold an evidentiary hearing every time a section 2255 petitioner simply asserts a claim of ineffective assistance of counsel, and stating: "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.").

## VIII. **Certificate of Appealability**

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal, but must obtain a certificate of appealability ("COA"). See 28 U.S.C. §2253(c)(1); Harbison v. Bell, 556 U.S. 180, 129 S.Ct. 1481 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." See 28 U.S.C. §2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the

petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court should deny a certificate of appealability. Notwithstanding, if petitioner does not agree, he may bring this argument to the attention of the district judge in objections.

## IX. Recommendations

Based on the foregoing, it is recommended that movant's motion be DENIED; that no certificate of appealability issue; that final judgment be entered; and, that this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 26th day of October, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Mario Javier Cedeno-Gonzalez, Pro Se
     Reg. No. 66880-018
     Adams County Correctional Institution
     Inmate Mail/Parcels
     Post Office Box 1600
     Washington, MS 39190

     Maurice A. Johnson, AUSA
     U.S. Attorney's Office
     99 NE 4th Street
     Miami, FL 33132
     Email: Maurice.Johnson@usdoj.gov